IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATIE W.,[1]                                1:19-cv-01099-BR

      Plaintiff,                          OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.


**JEFFREY H. BAIRD**
Dellert Baird Law Offices, PLLC
6525 California Ave. S.W., #101
Seattle, WA  98136
(360) 937-4112

      Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

--------------------------------

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2494

        Attorneys for Defendant

**BROWN, Senior Judge.**

        Plaintiff Katie W. seeks judicial review of the final
decision of the Commissioner of the Social Security
Administration (SSA) in which the Commissioner denied
Plaintiff's applications for Disability Insurance Benefits (DIB)
under Title II of the Social Security Act.  This Court has
jurisdiction to review the Commissioner's final decision
pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **AFFIRMS** the decision
of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

        On October 25, 2015, Plaintiff protectively filed her
application for DIB benefits.  Tr. 14, 158.[2]  Plaintiff initially

-------

        [2] Citations to the official Transcript of Record (#12)
filed by the Commissioner on December 12, 2019, are referred to
as "Tr."

2 - OPINION AND ORDER

alleged a disability onset date of April 24, 2013.  Tr. 14, 158.

Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on April 19, 2018.  Tr. 14, 28-65.  At the hearing

Plaintiff amended her alleged disability onset date to April 25,

2014.  Tr. 14, 35.  Plaintiff and a vocational expert (VE)

testified at the hearing.  Plaintiff was represented by an

attorney at the hearing.

On June 29, 2018, the ALJ issued an opinion in which he

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 14-22.  Plaintiff requested review by the

Appeals Council.  On May 16, 2019, the Appeals Council denied

Plaintiff's request to review the ALJ's decision, and the ALJ's

decision became the final decision of the Commissioner.

Tr. 2-4.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On July 17, 2019, Plaintiff filed a Complaint in this Court

seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on September 30, 1980.  Tr. 158.

Plaintiff was 33 years old on her amended alleged disability

onset date.  Tr. 66.  Plaintiff has at least a high-school

education.    Tr. 37.    Plaintiff has past relevant work

experience as a sorter/pricer, cashier/supervisor, driver,

hospital cafeteria worker, warehouse distribution manager,

women's apparel salesperson, lawn and garden salesperson, and

general sales attendant.    Tr. 21-22.

Plaintiff alleges disability due to a heart condition,

lupus, autoimmune disease, and a "rear [rare - *sic*] blood

disorder."    Tr. 66.

Except as noted, Plaintiff does not challenge the ALJ's

summary of the medical evidence.    After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the

medical evidence.    *See* Tr. 19-21.

## **STANDARDS**

The initial burden of proof rests on the claimant to

establish disability.    *Molina v. Astrue*, 674 F.3d 1104, 1110

(9th Cir. 2012).    To meet this burden, a claimant must

demonstrate her inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or

mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months."    42

U.S.C. § 423(d)(1)(A).    The ALJ must develop the record when

4 - OPINION AND ORDER

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than

one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012).  The court may not substitute its
judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA).  20 C.F.R. § 404.1520(a)(4)(i).  *See
also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at
724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so

6 - OPINION AND ORDER

severe as to preclude substantial gainful activity.  20 C.F.R.
§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

   If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec.
Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v.
Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

   At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

   If the Commissioner reaches Step Five, he must determine

whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since April 25, 2014, Plaintiff's amended alleged disability onset date.  Tr. 16.

At Step Two the ALJ found Plaintiff has the severe impairments of obesity, cardiomyopathy, lupus, heart arrhythmia, and sleep apnea.  Tr. 17.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P,

appendix 1.  Tr. 17.  The ALJ found Plaintiff has the RFC to perform the full range of sedentary work without additional limitations.  Tr. 18.

At Step Four the ALJ concluded Plaintiff is able to perform her past relevant work as a warehouse distribution manager. Tr. 21.

Accordingly, the ALJ found Plaintiff is not disabled. Tr. 22.


**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) gave great weight to the opinion of Leslie Kahl, M.D., Plaintiff's treating rheumatologist, and gave only partial weight to the opinion of John Rogers, M.D., Plaintiff's treating physician, without providing legally sufficient reasons for doing so; (2) failed at Step Two to consider Plaintiff's mental-health condition of depression; (3) failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (4) failed to provide legally sufficient reasons for discounting the lay-witness statements of Elaine W., Plaintiff's mother; and (5) improperly determined at Step Four that Plaintiff could perform her past relevant work.


9 - OPINION AND ORDER

I.    **The ALJ properly considered the medical opinions of Plaintiff's treating physicians.**

Plaintiff contends the ALJ erred when he gave great weight to the opinion of Dr. Kahl and only partial weight to the opinion of Dr. Rogers.  Plaintiff contends Dr. Kahl "only assisted" in the treatment of Plaintiff's lupus and did not consider all of Plaintiff's impairments when preparing her assessment.  In contrast, Plaintiff contends Dr. Rogers's opinion was based on his "longitudinal effort" to treat Plaintiff.

   A.    **Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*  When contradicted, a

treating or examining physician's opinion is still owed

deference and will often be "entitled to the greatest

weight . . . even if it does not meet the test for controlling

weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007).  An

ALJ can satisfy the "substantial evidence" requirement by

"setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Reddick,* 157 F.3d at 725.  "The

ALJ must do more than state conclusions.  He must set forth his

own interpretations and explain why they, rather than the

doctors', are correct." *Id.* (citation omitted).

### B.  Analysis

Dr. Kahl, Plaintiff's treating rheumatologist, has

treated Plaintiff for lupus since April 2016.  Tr. 1634.  In

September 23, 2016, Dr. Kahl noted Plaintiff had a facial rash,

intermittent joint pain, and antibodies that caused clotting,

which induced a pulmonary embolism.  Tr. 1633.  Dr. Kahl

indicated Plaintiff did not have any swelling in the five months

that she has treated her.  Dr. Kahl opined it was "not likely"

that Plaintiff would miss work due to her lupus despite her

complaints of fatigue and lack of stamina.  Tr. 1633.  Dr. Kahl

also indicated she did not know whether Plaintiff would need to

lie down during the day, but she noted Plaintiff's cardiac condition and obesity could be the source of her fatigue. Tr. 1633, 1899.  Dr. Kahl stated:  "I do not see lupus as a reason for [Plaintiff] not to be able to do at least sedentary work."  Tr. 1634.

The ALJ gave "great weight" to Dr. Kahl's assessment and found it to be consistent with the medical records showing Plaintiff's ejection fraction was stable between 39% and 45% based on multiple EKG test results subsequent to her hospital-ization in April 2014.  Tr. 20, 691, 1855-56, 1918-19.  The ALJ also noted Plaintiff's body mass index (BMI) was over 50. Tr. 642, 1896, 1693.

In a medical report on October 13, 2016, Dr. Rogers, Plaintiff's treating physician, also limited Plaintiff to sedentary work, but Dr. Rogers opined Plaintiff would miss four or more days of work per month, her regular work would decline, and she would need to lie down for two hours a day.  Tr. 1631-32.

Dr. Rogers rated the severity of Plaintiff's cardiac condition as Class II based on Plaintiff's ejection fraction of 20% to 41% among other factors.  Tr. 1631.  Plaintiff points out that a patient with a Class II cardiac disease rating on the New

York Heart Association (NYHA) scale has a slight limitation of physical activities; is comfortable at rest; and experiences fatigue, palpitation, dyspnea, or anginal pain with ordinary physical activity.  Pl.'s Brief (#15) at 4, Fn. 1.

The ALJ gave "great weight" to Dr. Rogers's limitation of Plaintiff to sedentary work on the ground that it was consistent with Plaintiff's lupus symptoms and ejection fraction limitations.  Tr. 21.  The ALJ, however, found Dr. Rogers's other limitations were not supported by the medical record because Plaintiff's ejection fraction and cardiac condition are stable and Plaintiff does not report any dyspnea with daily activities.  Tr. 21.

When weighing a medical opinion, the ALJ may consider whether the opinion is consistent with other medical evidence and a plaintiff's activities.  20 C.F.R. § 404.1527(c)(4).  Here the ALJ weighed the opinions of Drs. Kahl and Rogers and concluded based on the medical record that Dr. Rogers overstated Plaintiff's limitation as to her ability to work.  Tr. 21.

On this record the Court concludes the ALJ properly considered the opinions of Drs. Kahl and Rogers and provided legally sufficient reasons supported by substantial evidence in the record for discounting the opinion of Dr. Rogers.

**II.  The ALJ did not err at Step Two when he did not consider
      Plaintiff's depression.**

Plaintiff contends the ALJ failed at Step Two to consider
Plaintiff's mental impairment of depression.

**A.  Standards**

At Step Two the ALJ must determine whether the
claimant has a medically severe impairment or combination of
impairments.  20 C.F.R. § 404.1520(a)(4)(H).  If the claimant
presents a colorable claim of mental impairment, the ALJ is
required to complete the Psychiatric Review Technique (PRT).  20
C.F.R. § 404.01520a.  *See also Keyser v. Comm'r of Soc. Sec.
Admin.,* 648 F.3d 721, 725-26 (9th Cir. 2011).  Under the PRT the
ALJ must determine whether the claimant has a medically
determinable mental impairment, rate the degree of functional
limitation for four functional areas, and determine the severity
of the mental impairment.  *Id*. at 725.  If the impairment is
severe, the ALJ continues to Step Three of the original five-
step inquiry.  *Id.*  When Step Two is resolved in the claimant's
favor, however, an ALJ's failure to find other severe
impairments is considered harmless error.  *See Mondragon v.
Astrue,* 354 F. App'x 346, 348 (9th Cir. 2010)("Any alleged error
at step two was harmless because step two was decided in
[claimant's] favor with regard to other ailments.").

**B.    Analysis**

On December 16, 2016, Roger McDowell, LCSW, performed a mental-health assessment of Plaintiff.  Tr. 2159-63.  LCSW McDowell diagnosed Plaintiff with an "adjustment disorder with mixed anxiety and depressed mood."  Tr. 2162.  He recommended Plaintiff receive individual therapy to address her depression symptoms.  Tr. 2163.  On December 21, 2016, Dr. Rogers confirmed positive signs of depression in Plaintiff.  On January 12, 2017, Plaintiff complained to Dr. Rogers about her depression and wanted to discuss medication to treat it.  Tr. 2164, 2173. Dr. Rogers scheduled lab work to determine whether Plaintiff's depression had a physical cause.  Tr. 2173.

In her DIB application Plaintiff listed impairments of a heart condition, lupus, autoimmune disease, and a "rare" blood disorder.  Tr. 66.  Plaintiff did not indicate any impairment based on mental-health issues, and neither the initial review by the Commissioner nor the reconsideration of Plaintiff's claim by the Commissioner included any evaluation of mental-health impairments.  Although at the hearing before the ALJ on April 19, 2018, Plaintiff testified she experienced depression when she was unable to maintain her exercise program for her cardiac rehabilitation, the ALJ did not address Plaintiff's

depression or provide any assessment as to whether it
constituted an impairment or resulted in any limitation.
Tr. 52.

Plaintiff asserts pursuant to the regulations the ALJ
was required to do a PRT assessment.  Such a requirement,
however, only exists when the claimant asserts a colorable claim
of impairment.  *Keyser,* 648 F.3d at 726.  "A colorable claim is
one which is not 'wholly insubstantial, immaterial, or
frivolous.'"  *McBride Cotton & Cattle Corp. v. Veneman,* 290 F.3d
973, 981 (9th Cir. 2002)(quoting *Cassim v. Bowen,* 824 F.2d 791,
795 (9th Cir. 1987)).  In this case, as noted, Plaintiff did not
assert in her application for DIB that she had any mental-health
impairment.  In fact, Plaintiff only testified she experienced
depression when she was unable to maintain her cardiac
rehabilitation routine.  Moreover, neither LCSW McDowell nor
Dr. Rogers indicated Plaintiff was limited in her ability to
work based on her depression.

On this record the Court concludes Plaintiff has not
asserted a colorable claim of mental impairment, and, therefore,
the ALJ was not required to perform the PRT assessment as part
of his evaluation of Plaintiff's claim.  Accordingly, the ALJ
did not err in this regard.


16 - OPINION AND ORDER

## III. The ALJ did not err when he discounted Plaintiff's symptom testimony.

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### A.   Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of

17 - OPINION AND ORDER

malingering, "the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of
malingering based on affirmative evidence thereof, he or she may
only find an applicant not credible by making specific findings
as to credibility and stating clear and convincing reasons for
each."). General assertions that the claimant's testimony is
not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007). The ALJ must identify "what testimony is
not credible and what evidence undermines the claimant's
complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834
(9th Cir. 1995)).

### B.  Analysis

Plaintiff testified she is chronically fatigued and
naps five or six times a week from two-to-six hours a day.
Tr. 43, 47. She stated she cannot sit or stand for more than an
hour, cannot do heavy lifting, and holds someone's arm when
walking. Tr. 213, 216. Her hobbies are mainly sedentary
activities such as watching movies, reading, or spending time on
her computer. Tr. 43, 214.

In June 2014 Plaintiff reported although she has experienced shortness of breath and felt like her heart was beating stronger, she was able to do things such as shop.  She denied experiencing palpitations, dizziness, or syncope. Tr. 609.  In December 2014 Plaintiff had an ICD defibrillator and pacemaker implanted.  Tr. 479.  On April 25, 2014, Plaintiff suffered a pulmonary embolism and was diagnosed with congestive heart failure.  Tr. 532.  In February 2015 Plaintiff began a cardiac rehabilitation program by walking on a treadmill and subsequently reported walking daily.  Tr. 755, 786.  She reported "doing well" and participating in rehab three days a week.  Tr. 813.  By January 2016 Plaintiff had limited shortness of breath and was described as "very stable."  Tr. 1611.  The ALJ also noted Plaintiff was able to go on vacation with her parents in late 2017, to cook meals (although at a slow pace), to do laundry, and to do household chores occasionally.  Tr. 20.

The ALJ concluded Plaintiff's statements regarding her symptoms were inconsistent with the medical evidence and her reported daily activities.  Tr. 19.

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided legally

19 - OPINION AND ORDER

sufficient reasons supported by substantial evidence in the record for doing so.

**IV.   The ALJ's failure to discuss the lay-witness statement of Elaine W., Plaintiff's mother, was harmless error.**

Plaintiff contends the ALJ erred when he failed to address the lay-witness statement of Plaintiff's mother regarding Plaintiff's limitations.

### A.   Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

### B.   Analysis

On April 19, 2018, Elaine W., Plaintiff's mother,

testified at the hearing before the ALJ.  Her description of
Plaintiff's symptoms and limitations regarding Plaintiff's
fatigue and inability to sit for long periods was similar to
Plaintiff's own description of her symptoms and limitations.
Tr. 28, 53.

Defendant acknowledges the ALJ did not discuss Elaine
W.'s testimony in his decision.  Def.'s Brief (#16) at 8.
Because the Court has already concluded the ALJ properly
discounted Plaintiff's testimony, however, the ALJ may also
properly discount the similar testimony of Plaintiff's mother
based on the same reasons.  *See Bayliss v. Barnhart*, 427 F.3d
1211, 1218 (9th Cir. 2005)(germane reasons for discrediting a
lay-witness's testimony include the fact that the testimony
"generally repeat[s]" the properly discredited testimony of a
claimant).  Accordingly, although the ALJ erred when he failed
to address Elaine W.'s testimony, the Court concludes the error
was harmless.

**V.    The ALJ did not err at Step Four when he determined
        Plaintiff could perform her past relevant work.**

Plaintiff contends the ALJ's determination at Step Four
that she is able to perform her past relevant work is not
supported by substantial evidence in the record.

**A.    Standard**

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

**B.    Analysis**

At Step Four the ALJ found Plaintiff has the RFC to perform a full range of sedentary work (including her past relevant work as a Warehouse Manager) based on the VE's testimony.  Tr. 18.  Plaintiff, however, contends the VE provided an inaccurate description of how Plaintiff performed her work as a Warehouse Manager.

Plaintiff notes on her Work History Report that she marked "other" when she described the heaviest weight she lifted at her job.  Tr. 204.  Plaintiff also marked on the form that she frequently lifted 50 pounds, noted she spent "all" of her time supervising people, stated she was "always moving and lifting boxes or bags," and indicated she spent time sorting clothing and other donations.  Tr. 38, 204.  Thus, Plaintiff asserts her work as a Warehouse Manager as she performed it is more consistent with a heavy exertional level rather than a sedentary level.

At the hearing the VE testified the occupation of
Warehouse Manager was classified as sedentary work by the
Dictionary of Occupational Titles (DOT), but he noted Plaintiff
described her performance of this work as more consistent with
medium work.  Tr. 60-61.  The VE described the duties of a
Warehouse Manager as listed in the DOT, and Plaintiff agreed the
description was generally consistent with the work she
performed.  Tr. 62-63.  The ALJ posed the hypothetical to the VE
whether a person with the RFC to perform the full range of
sedentary work could perform the Warehouse Manager job as
described in the DOT, and the VE agreed.  Tr. 63.  Accordingly,
the ALJ concluded Plaintiff is able to perform her past relevant
work as a Warehouse Manager as it is generally performed.  Tr.
21-22.

A claimant is not disabled to the extent that a
claimant can perform her past relevant work.  20 C.F.R.
§ 404.1520(e) and (f).  Past relevant work can be as the
claimant actually performed it or as it is generally performed.
SSR 82-61.

Accordingly, on this record the Court concludes the
ALJ did not err at Step Four when he found Plaintiff has the RFC
to perform a full range of sedentary work, including her past

relevant work as a Warehouse Manager as it is generally performed, and his determination is supported by evidence in the record.

## CONCLUSION

For these reasons the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 6th day of July, 2020.

 s/ Anna J. Brown
ANNA J. BROWN
United States Senior District Judge